PACIFIC R. Co. OF MO. *v.* CUTTING, Jr., and others.

(*Circuit Court, S. D. New York.*   April 3, 1886.)

CORPORATION — DISTRIBUTION OF FUND — CROSS-BILL — BILL OF INTERPLEADER.
In an action by a corporation for the equitable distribution of a specific fund, the court will consider this fund only, and will not settle all accounts between the corporation and its stockholders; and if a stockholder desires a general distribution of all the property, he must seek relief by an original bill, or an original bill in the nature of a cross-bill.

In 1885 the Pacific Railway Company of Missouri filed its bill in equity asking for a receiver, the equitable distribution of a certain fund in the hands of its officers, and for an injunction to prevent the bringing of suits by stockholders for the recovery of the fund. Robert S. Cutting and Peter Marie were, by order of court dated April 20 and May 8, 1885, appointed receivers of said fund. By interlocutory decree dated December 19, 1885, the injunction was granted and the matter referred to Edward K. Jones, Esq., with instructions to hear and determine who was entitled to participate in the distribution of said fund. All the defendants answered, substantially admitting the averments of the bill, and setting up their respective claims to participate in the fund, except one Kerens, who, by an *ex parte* order, became a party to the suit. He set up that from the proceeds of the settlement of another suit certain stockholders had received dividends, which should be taken into consideration in the distribution of the present fund. The remaining facts material to the issue are stated in the master's certificate.

The master in this case requested the instruction of the court upon the following question and accompanying statement:

*To the Honorable Judges of the Circuit Court of the United States within and for the Southern District of New York, sitting in Equity:*

The undersigned, the master appointed by the interlocutory decree made in this cause on the nineteenth day of December, 1885, respectfully asks the court for its special instruction and direction upon the following question and accompanying statement; that is to say, whether or not, under the pleadings and the interlocutory decree, it is competent for the master, at the instance of a dissatisfied stockholder, admitted as a party to the record, or otherwise coming in and proving his claim, to take into account, as against other

stockholders coming in and claiming to share in the fund in court, moneys obtained by such stockholders from another fund alleged to belong to the corporation, and to be rightfully distributable among all the stockholders alike.

The facts, as I gather them incidentally from the examination of collateral questions, appear to be these: In the year 1875 a suit was brought in the circuit court of the United States, at St. Louis, Missouri, to foreclose the mortgage given by the plaintiff to secure what were known as its "Third Mortgage Bonds." A portion of the stockholders of the company, deeming the mortgage to have been unlawfully issued, and claiming that there was fraud and collusion in its foreclosure, met together, and appointed a committee to represent them, and to take such measures in their behalf as the committee should deem proper and effectual to defeat the foreclosure, and to set aside the mortgage. This committee resorted to various proceedings with a view to prevent the foreclosure, and, pending their efforts in that behalf, also entered into negotiations with the late Cornelius K. Garrison, then, with his associates, in substantial and potential control of the plaintiff, and holding most of its third mortgage bonds, with a further view of effecting a compromise. The result of those negotiations, as I understand the facts, was an agreement between Mr. Garrison and the committee representing the stockholders above referred to, that, if opposition to the foreclosure were withdrawn, he (Garrison) and his friends would purchase the property of the railroad at the foreclosure sale, organize a successor company, and give to each stockholder in the plaintiff company a corresponding number of shares in the new corporation. Some misunderstanding between the parties seems to have taken place, by reason of which this agreement collapsed, and then a new promise, resting upon the same condition as to withdrawal of opposition to the foreclosure, but upon a different basis as to the capital stock of the proposed new company, was made by Garrison. This new promise, it is alleged, was that Garrison should organize a successor corporation, as before contemplated, and give to those stockholders only who were represented by the committee shares in the proposed new company equal in number to their holdings in the old or plaintiff company. Opposition to the foreclosure suit having been finally withdrawn, a decree of foreclosure and sale of the property of the railroad covered by the mortgage was thereupon made and executed. A dispute then also arose as to the latter agreement, and it appears that Garrison wholly refused to fulfill the contract. A meeting of stockholders of the plaintiff corporation was afterwards called, and most of the gentlemen composing the stockholders' committee were appointed upon another committee, authorized, it is claimed, to act for and in the name of the corporation; and it has been stated to me in the proceedings in this case that the object in altering the composition of the corporation committee from that of the stockholders' committee was solely to give places upon the corporation committee to citizens of the state of Missouri. The corporation committee instituted various litigations to set aside the foreclosure, and otherwise, which ultimately resulted in the fund now brought into court. The old or voluntary committee sued Garrison on his contract. All the litigations were settled at one and the same time, and the terms of settlement of each respectively are embraced in one document, which has been produced, proved, and put in evidence before me. Five hundred thousand dollars, or thereabouts, was paid by Garrison in settlement of the personal suit against him, and $500,000, less the sum of $41,000, was also paid in settlement of the suits maintained by the corporation. It is alleged before me, and thus far not denied, that the money received from Garrison in settlement of the suit against him personally has been distributed among those stockholders only whose shares were placed at the disposal of the original or voluntary committee, the same being somewhat more than a majority of the whole number of shares. All the shares represented by the voluntary committee, and which participated in the dis-

tribution of the fund realized from the settlement of the suit against Garrison personally, have been proved before me; and the holders thereof, or those acting for them, claim the right to also participate in the fund now in court. Certain other stockholders, who have also proved their claims before me, but who did not participate in the outside fund, contend that those stockholders who obtained the benefit of the outside fund should not be allowed to participate in the present fund until an account be taken against them of the dividend they have received, the contention being upon the alleged ground that the outside fund should have been turned over to the corporation and distributed, as it is proposed to distribute the present fund, among all the stockholders indiscriminately. In other words, the contention is that the moneys received from the settlement of all the suits should be treated in this proceeding as but one fund, and those stockholders who received a distributive share thereof should be charged with such share in the present distribution.

The question is then raised whether or not the stockholders who did not participate in the outside fund are entitled to have the distribution thereof taken into account against those stockholders who have received its benefits, such stockholders being all before the master. The particular point to be decided at the present stage of the case is whether or not an inquiry should be directed in order to determine this question. The subject has been argued before me by counsel, and the proposed inquiry is resisted by some of them with unusual energy. I have no doubt whatever in my mind as to the proper disposition of the question, and while I am clothed with full power to decide it myself, I have nevertheless thought it but fair to the parties, and a just deference to the able and experienced counsel with whose views I find myself opposed, that I should submit the matter to the direction of the court. It being the unanimous desire of counsel, I will state my own opinion upon the subject, and briefly summarize the reasons upon which it is based.

I think the inquiry entirely proper and competent; that the stockholders raising the questions are entitled to have it disposed of on the merits; and that the ends of justice will be subserved by its determination in this case.

The stockholders taking the position stated could, in my judgment, raise substantially the same question in either of three ways: *First,* they could have filed an original bill, or an original bill in the nature of a cross-bill, to compel the stockholders who received the outside fund to pay the same into the treasury of the corporation, or otherwise account for it to the stockholders; *second,* they could have filed a cross-bill, in the present case, for the same purpose; or, *third,* they can raise the question before the master in the form suggested, as upon an accounting between themselves and the stockholders whose shares received the benefit of the outside fund.

The grounds upon which the inquiry is resisted, as I understand them, are these: *First,* because, there being no cross-bill filed, the subject does not come within the purview of the suit; *second,* because of a supposed defect of parties; and, *third,* because, if a determination of the question were made, the final decree in this case would not bind the stockholders.

All these objections, it will be seen, are more or less involved with each other. The present suit is of an anomalous character, but may be said to fall within the general definition of bills in the nature of bills of interpleader, and also partaking of the nature of an equitable administration. It is brought by a corporation which has lost its vitality and energies as a going concern, and the object sought in the liberation of a fund in its hands— *First,* by payment of the claims of creditors; and, *secondly,* by the distribution of the residue among its shareholders. The purview of the suit is, in my judgment, best defined in the interlocutory decree, which directs the master "to ascertain all persons who are entitled to participate in the distribution of fund in court, *and the amount of their respective claims.*"

The subject of pleadings and practice in equity, from the nature of the cases cognizable in those courts, is divided into two general branches, in the first of which may be grouped all those cases falling within the general designation of "hostile litigation;" and in the other, that class which may be termed "administrative." Mitf. & T. Eq. Pl. Introd. 10, 11. In cases of "hostile" or "contentious" litigation, the court renders its final decree *secundum allegata et probata.* In cases of "administrative" jurisdiction, the court relaxes its strictness, and moulds its procedure to suit the exigencies of the particular case. Mitf. & T. Eq. Pl. *supra;* Story, Eq. Pl. § 99.

This suit, as I understand it, comes within the definition of that class of cases termed "administrative." The interests of all the shareholders are brought before the court by impleading suitable representatives, it having been impracticable to join all the defendants by name, because many were unknown, and, if they had been known, they form too numerous a body to be made parties. The theory upon which the bill is framed as to parties is therefore the joinder of all the stockholders as defendants. Until the stockholders come in, they are parties by representation merely, and, though bound by the decree as far as the fund is concerned, they are not prevented from afterwards litigating the same question in another suit. But when they come in, whether by intervening upon the record or before the master, they become parties to the suit as effectually as if originally joined by their individual names. Their specific mention and enumeration in the caption of the bill, in the prayer for process, and in the original writ, would not, as I understand the rule in cases of this kind, make a particle of difference in their character as parties. Their interests are cared for by the final decree precisely as if they had been originally joined by name instead of description, and their rights in the premises, as adjudicated by the court, will be finally and conclusively settled. Mitf. & T. Eq. Pl. 46, 474; *Neve* v. *Weston,* 3 Atk. 557; *Giffard* v. *Hort,* 1 Schoales & L. 409, decided by Lord REDESDALE; Story, Eq. Pl. § 99. Parties coming in before the master, being bound by the decree, have the right to appeal. The reason is that the decree binds their interests. *Giffard* v. *Hort, supra,* cited 2 Daniell, Ch. Pr. (4th Ed.) 1461. And if such parties bring a new suit, a plea of the pendency of the former suit will be allowed. *Neve* v. *Weston,* 3 Atk. 557. And such parties are so far bound by the decree that, if they *neglect* to litigate their rights, they are forever barred from afterwards asserting such rights in other proceedings. *Sawyer* v. *Birchmore,* 1 Keen, 391, 825; *Cattell* v. *Simons,* 8 Beav. 243; S. C. 9 Jur. 418; *Hull* v. *Falconer,* 11 Jur. (N. S.) 151.

The stockholders in the present case may be regarded, in considering the question now under notice, as composed of two groups: (1) Those who united together to obtain redress against the fraudulent mortgage, and its wrongful foreclosure, (being somewhat in excess of a majority;) and (2) those who remained neutral, and refused to join in, and co-operate with, the movement. All the stockholders of the first group have come in before the master. A great number of those of the second group have also come in before the master.

Now, the interlocutory decree provides that the master shall, *inter alia,* ascertain all the stockholders "who are entitled to participate in the distribution of the fund brought into court, *and the amount of their respective claims.*

The question, then, reduces itself to this: The stockholders of the second group say that those of the first group shall first have debited against them the dividend they have already received before they shall participate in the present fund. I am unable to discover any objection whatever, technical or otherwise, for refusing the adjudication of this question in this case. It seems to me that the case should proceed, as between these stockholders, upon the analogies of an accounting between partners, in which it would be

indubitably competent and proper for one party to show that the other had collected funds belonging to the partnership, and failed to turn them over to the firm. Or, to recur to another analogy, take the case of a general administration in equity. No one, I think, will deny that in such a case it would be entirely competent for one distributee, or a group of distributees, to reduce the distributive share of another by proving an advancement. No cross-bill is necessary, in my judgment, to enable the stockholders in this case to demand this adjustment. A cross-bill is necessary only in cases where defendants demand *affirmative* relief. This relief is not affirmative. It may rather be said to be negative and passive. Issues such as this between defendants are always determined by courts of equity irrespective of the state of the pleadings, and without formal adversary proceedings; and if, after hearing the parties, the questions are passed upon and decided by the court, they are final and conclusive. *Corcoran* v. *Chesapeake & O. Canal Co.*, 94 U. S. 741; *Louis* v. *Brown Tp.*, 109 U. S. 162; S. C. 3 Sup. Ct. Rep. 92. The standard for determining *res adjudicata* is whether or not the same evidence will support both issues. Tested by this, the stockholders opposing the investigation demanded need not, as I apprehend, trouble themselves with the fear that they will be again molested with the agitation of this question. The evidence necessary to settle the inquiry proposed in this case must be precisely the same in every form in which this issue can be raised, the essentials of which are the matters involved in the question whether or not the outside fund belonged to all the stockholders, or to that portion among whom it has been divided. I do not express, or even suggest, any opinion whatever upon the merits of the question involved. I merely intend to say that, in my opinion, it is a fit subject of inquiry to enable the court to finally adjudicate this case; and that, as I understand the practice, it is a novel doctrine that a court of equity, with its plenary powers, and its boasted flexibility of procedure, cannot investigate and determine the question now raised. If the contention has merit, the stockholders raising it, aside from their estoppel hereafter, should not be compelled to witness the distribution of the present fund, and be remitted to other proceedings against the hundreds of individual stockholders who received the outside fund. If the contention has no merit, the resisting stockholders should not be harassed with litigation in the future.

The principles above alluded to are, as I understand the practice in equity, so plain and well established that their mere statement will at once command assent. I have, therefore, not deemed it necessary to go into an elaborate examination, discussion, and citation of the authorities.

EDWARD K. JONES, Special Master.

To which the court, after hearing counsel, returned the following. In Equity.

*Charles M. Da Costa,* for complainant.

*Augustus C. Brown,* for defendants Cutting and Marie.

*Clifford A. Hand,* for defendant Bodine and others, stockholders.

*William H. Sage,* for defendant Kerens and other stockholders.

*Daniel H. Chamberlain,* for defendant Cowdrey.

*Jerome & Nason,* for other stockholders.

WALLACE, J. A fund is in court for distribution among the stockholders of the complainant according to their respective interests. One class of participants insists that participants of another class should not share equally in the distribution, because the latter have appropriated to themselves exclusively another fund belonging to the cor-

poration, the proceeds of which should be distributed equally among all the stockholders. If the suit under which the fund is brought here for distribution were one to settle all accounts between the corporation and its stockholders, and to distribute all its assets according to the respective rights of the stockholders, then it might well be urged that the court must ascertain what moneys or property belong to the corporation, whether actually brought into court or not,—and if it should appear that moneys belonging to it have been appropriated by one class of stockholders to the exclusion of another class, a decree would be made proceeding upon that basis. If the fund actually brought in would be sufficient to satisfy the just claims of the stockholders who did not share in the fund which has been appropriated by the others, the decree would provide for a distribution by which the claims of the former would be satisfied in full, and the claims of the latter reduced by deducting what they had already received. But this suit is brought to distribute a specified fund, which the corporation is unable to distribute by its own instrumentalities. By reason of different relations sustained towards this fund by different classes of stockholders, the corporation is equitably required to discriminate between them, and to recognize the right of one class, by reason of the expenditures they have incurred to produce the fund, to have an additional allowance made to them which will reimburse them. The claim of this class for reimbursement is one against the corporation, and is an equitable lien upon the fund which they have realized for the corporation. Further than this the corporation does not seek to adjust the rights of stockholders to share in its property.

Upon the facts alleged by Mr. Kerens, and those who unite with him, the moneys received by the stockholders of the Cowdrey committee belong to the corporation if they do not belong to those stockholders personally. An action to recover these moneys must be brought by the corporation, unless it refuses to sue, and a case can be made authorizing a stockholder to sue in behalf of the corporation. A decree in such a suit would conclude all the stockholders as well as the parties defendant. The determination of an issue in this suit between stockholders of one class and those of another, concerning the respective rights of each in a fund not sought by the bill to be brought into court for distribution, might conclude the immediate parties to the issue, but certainly would not adjudicate the rights of others. The stockholders of the Cowdrey committee could not invoke the adjudication as an estoppel if they should succeed, when other stockholders, not parties to the issue, might seek to retry the questions involved. If any stockholders are entitled to require the corporation to make a general distribution of all the property among the stockholders, they must seek relief by an original bill, or an original bill in the nature of a cross-bill.

The master is therefore directed to proceed in conformity with these views.